SYLVAN G. BUSHEY

*v.*

THE NATIONAL STATE BANK OF CAMDEN et al.

[Argued December 19th, 1906. Decided April 16th, 1907.]

Mortgages were made to H. L., who was president of a national bank, to secure moneys due to that bank. H. L. filed a bill to foreclose them, and did not make the bank a party thereto. A decree of foreclosure followed, and upon the *fieri facias* thereon issued the sheriff exposed the mortgaged premises to sale, and the complainant in this cause bought three of the mortgaged tracts. These tracts had been sold for taxes, and certificates of sale had been issued which the bank had acquired by assignment, and was proceeding to obtain declarations of sale thereon. On bill to enjoin the bank from enforcing the certificates—*Held*, (1) that the mere fact that the bank had not been made a party to the foreclosure exhibits no equity to sustain the relief sought; (2) if the bank (if made a party to the foreclosure) would have been compelled to bring in its claim under the tax sales, to be enforced with the mortgage debt, an

equity might arise thereon, but as the bank acquired its claim, not by redemption under notice from the purchasers, but by an assignment of the rights of .the purchasers, which gave a prior lien on the lands, it would not have been compelled to bring them into the foreclosure; (3) the claim that a solicitor of this court, attending for the bank at the foreclosure sale, made representations to the complainant in this cause before he purchased which estopped the bank from enforcing against him the rights it acquired by the assignments of the certificates of sale is not made out by proofs.

On bill for relief.

*Mr. Ralph W. E. Donges,* for the complainant.

*Mr. Edward Dudley,* for the defendants.

MAGIE, CHANCELLOR.

The purpose of this bill is to procure a decree declaring null and void certain certificates of sale of lands for taxes assigned to and held by the National State Bank of Camden, and an injunction restraining the defendants from assigning said certificates, or proceeding to collect the sums due thereon, or from applying for a deed in fee-simple for the lands named in said certificates.

The case has been brought to hearing upon the bill, answer and replication, and a stipulation of the parties that the affidavits annexd to the bill and the affidavits annexed to the answer shall be considered and treated as depositions in the cause.

From these affidavits there are certain facts appearing without contest. On the 10th of July, 1903, the complainant, Bushey, bought from the sheriff of Camden county three tracts of land which were exposed by the sheriff to public sale. The sale was made upon a *fieri facias* issued out of this court, and the writ was issued upon a decree in a cause in which Heulings Lippincott, one of the defendants, was complainant, and Aaron Ward and his wife were defendants. That bill was filed for the foreclosure of two mortgages given by Aaron Ward to Heulings Lippincott, and Aaron Ward and his wife were the sole defendants so far as appears. The mortgages were made by Ward to Lippincott, not for any indebtedness due to Lippincott, but to secure

the National State Bank at Camden money owed to it by Ward, and the mortgages were made to Lippincott because he was the president of the bank. While the mortgages were outstanding, and before the bill to foreclose them was filed, the mortgaged lands, including those bought by complainant at sheriff's sale, had been sold for taxes. Some of them had been bought by the city, and one tract by a third person. The sale was under the Martin act, and certificates were duly issued to the purchasers. The bank purchased and took assignments of all the certificates affecting complainant's land before the bill to foreclose the mortgage was filed. It was about to apply, or had applied, to the city for a deed for said lands.

It further appears that, at the time the lands were exposed to sale by the sheriff, some conversation occurred between the complainant and a solicitor of this court, who appeared at the sale in behalf of the bank. What the conversation was is a matter of contest. The complainant and the solicitor disagree in their recollection of it, and there is no other evidence of what was said by the parties to the conversation.

It is first suggested that the foreclosure proceeding was defective, in that the National State Bank of Camden, for whose use the mortgages were held, should have been made a party thereto. The complainant, however, having bought the lands under the decree made in that cause, and having taken the sheriff's deed, after the sale had been confirmed without objection from the defendants in that cause, or from him as a purchaser, cannot, in this collateral way, object to the proceedings therein, or found any equity upon the supposed error in the foreclosure. If the defendants in that cause might have objected to its being proceeded with in the absence of the bank, the *cestui que trust* of Lippincott (*Tyson* v. *Applegate, 40 N. J. Eq. (13 Stew.) 305,* and *Johnes* v. *Outwater, 55 N. J. Eq. (10 Dick.) 398*), they presented no objection and the cause went to a decree. Complainant's purchase on the *fieri facias,* issued on the decree, conferred on him the title which Lippincott had acquired by the mortgages, and the title of the mortgagors who made them. *Boorum* v. *Tucker, 51 N. J. Eq. (6 Dick.) 135; Wimpfheimer* v. *Prudential, &c., Co., 56 N. J. Eq. (11 Dick.) 585; Champion* v.

*Hinkle, 45 N. J. Eq.* (*18 Stew.*) *162.* If the bank were setting up any claim under the mortgage taken by Lippincott for its benefit, doubtless, upon the facts shown, that the sale produced all that was secured thereby, which presumably has been paid to it, an injunction against the presentation of that claim would be allowed. But the mere fact that the bank was not a party to the foreclosure does not present any equitable ground for relief.

But the contention is that if the bank had been made a party, it would have been obliged to put in and enforce in that proceeding the rights which it had acquired under the assignments of the certificates of sale, and that it was inequitable to so conduct that cause as to omit the claim which the bank had in that respect.

If the complainant had sought relief from his contract to purchase, or opposed the confirmation of the sale, the existence of an outstanding lien not affected by the foreclosure proceedings would not have justified relieving him from his obligation. The lien of the taxes and the sales thereunder could have been discovered from the public records. A purchaser at a judicial sale who neglects to acquire such information, and deliberately assumes the hazard of buying in ignorance, must bear the consequences of his negligence. *Hayes* v. *Stiger, 29 N. J. Eq.* (*2 Stew.*) *196.*

It is obvious that the contention now under consideration will have no force unless the bank, if made a party to the foreclosure suit, would have been compelled to set up therein its interest as an assignee of the tax certificates.

When taxes are unpaid a municipality may enforce the lien which is given to that burden upon the land, by a sale under the provisions of the sixth section of the Martin act, which seems to be yet substantially in force. The purchaser at a sale for taxes may give notice of the sale to the mortgagee holding a mortgage upon the lands, and the mortgagee may, thereupon, redeem the lands by paying to the treasurer of the city for the use of the purchaser the sum paid by the purchaser, with interest. *3 Gen. Stat. p. 3372* § *415.* By the eighth section of a supplement to said act, approved April 18th, 1889, a mortgagee who redeems land sold for taxes may retain a first lien thereon

for the amount paid to procure the redemption, with lawful interest, and the payment of other taxes afterward assessed thereon. *3 Gen. Stat. p. 3381 § 442.*

By the second section of a supplement to the same act, approved May 23d, 1890, a redeeming mortgagee is given power to enforce a lien acquired by the redemption by any appropriate proceedings which the section provided may be instituted and maintained, either independently of, or before, or in connection with the proceedings to enforce the mortgage. *3 Gen. Stat. p. 3383 § 449.*

Under this legislation it is plainly open to question whether, if the bank in the case under consideration had been notified by the purchasers of the mortgaged premises at the sale for taxes, and had redeemed the property, it would not have been compelled, if made a party to the foreclosure, to enforce its claim in connection therewith.

But this was not the transaction which occurred. It does not appear that any notice whatever was given to the bank, and the bank did not, in fact, redeem under the provisions above referred to. On the contrary, the bank proceeded to acquire the title or interest which the purchasers at the tax sale had acquired, and which was represented by the certificates of sale held by them. The city was the purchaser of some of the tracts. By the provisions of a supplement, approved April 16th, 1891, the city was expressly authorized to become a purchaser at a sale of lands for taxes, the same as any other purchaser, and the certificate of sale is to be made to the city, and the mayor, in behalf of the city, may cause the notice otherwise required to be served on the owners and mortgagees of the land purchased, and the city may be entitled to a deed in the same manner as any other purchaser, if the lands are redeemed from the sale. *3 Gen. Stat. p. 3384 § 453.* By a supplement, approved March 23d, 1895, the certificate of sale issued to any city for lands thus bought may be assigned to any person. *3 Gen. Stat. p. 3390 § 485.* By the provisions of the further supplement, approved March 16th, 1893, an assignee of a certificate of sale given under the acts may give notice to the mortgagees and owners and acquire the title to the lands and receive a deed therefor in the same manner as

if the assignee had been the original purchaser at the tax sale. *3 Gen. Stat. p. 3389 § 478.*

It is to be noted that, although the sheriff's sale in this case was made after the passage of the act for the assessment and collection of taxes, approved April 8th, 1903, the provisions of the sixty-sixth section of that act prevented its operation on taxes previously in default, for the act was expressly declared to take effect only on the 20th of December, 1903.

Under the above provisions, it is obvious that the bank acquired by the purchase and assignment of the certificates of sale of the mortgaged lands a lien which was superior to the lien of the mortgage in which it had an interest. If the bank had been a party to the foreclosure proceedings, it need not have included the lien thus acquired in its demand for relief. If it had been made a party defendant and had answered claiming a prior lien, it might have been dismissed from the case, and probably would not have been required to present its claim except for the purpose of redemption. As the holder of a prior lien claim which, if made a party to the foreclosure proceeding, the bank would not have been obliged to enforce therein, no equity arises because the bank was not made a party.

It is further contended that the assignments of the certificates of sale to the bank vested no property or interest in it, because of the limitation on the power of national banks, contained in the legislation of congress. It is conceded that a national bank may acquire property of this sort to protect debts due to it.

As it appears in this case that the bank, as a *cestui que trust* in the mortgage made to Lippincott, held an interest in the lands in question, and as it is proved that the bank purchased the certificates of sale and procured their assignment to it for the purpose of protecting its mortgage interest, I deem it free from any doubt that the bank lawfully acquired such interest as was passed to it by the assignments.

It is lastly contended that the solicitor who attended this sale in behalf of the bank procured complainant to purchase the three tracts by the representation that if complainant bid for them a certain amount all claims of the bank would be dis-

charged. The contention is that the bank is now estopped from setting up a claim which it then held. The solicitor, in giving an account of the interview, testified that the conversation related only to the claims which were the subject of the sale; that the *fieri facias* and a statement made therefrom were before the parties, and that any assertion that the bids would cover the claims, related to the claims contained in the *fieri facias,* and which were calculated with interest and costs. If the complainant insists that the solicitor's language went further than to represent the amount of the claims for which the sheriff was selling, I think he has failed to establish that by proof. If, however, that was the impression made upon his mind, and he chose to rely upon it as an assertion that the amount bid, made up of amounts in the decree with interest and costs, would discharge all claims of the bank, he encounters these insuperable difficulties: there is no proof that the solicitor was authorized by the bank to act for it with respect to any other claims than those which were contained in the decree procured by Heulings Lippincott, the bank's trustee; and in the next place, the sheriff's deed can only convey the interest of the parties in the mortgage. What that interest is, and to what prior liens it may be subject, an intending purchaser is supposed to discover by searching in the proper place of record.

Upon the whole case I think the complainant fails to disclose an equity to have the decree which he seeks, or any germane decree upon the subject-matter made.

The bill will be dismissed.